**JESSICA C. AGATSTEIN**
California State Bar No. 319817
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Jessie_Agatstein@fd.org

Attorneys for Mr. Ibarra

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:   19-CR-4800-LAB |
| Plaintiff, | **Supplemental sentencing memorandum following remand for supervised-release resentencing** |
| v. | |
| CARLOS IBARRA, | |
| Defendant. | |

Carlos Ibarra is a partner, a stepfather, a son, and a brother to four sisters. "He is the pillar of [his] family." Exhibit A at 5. He also made a serious mistake—and, facing the consequences, is now one-third into his 90-month sentence for methamphetamine importation. Following the Ninth Circuit's order vacating his supervised-release sentence, ECF 71, he asks for two things.

**First, he asks this Court to impose a supervised-release condition that allows him to visit family members in Baja California.** Mr. Ibarra is an American citizen. But his partner, stepdaughter, three sisters, and mother all live in Ensenada. His father and eldest sister live in Tijuana. Only one family member can enter the United States. If Mr. Ibarra can see family in Mexico, while living and working in San Diego, he can earn back Probation's and this Court's trust while also fulfilling the deterrence and safety goals of supervised release.

**Second, he asks this Court to recommend that he be placed in FCI Miami or FMC Carswell to participate in Spanish-language RDAP.**

**I.     This Court should narrowly tailor Mexico supervised-release conditions to account for Mr. Ibarra's strong family ties in Ensenada.**

This Court should allow Mr. Ibarra to visit the state of Baja California upon his release from custody. It should not impose a blanket do-not-travel-to-Mexico supervised-release condition.

Mr. Ibarra is very, very close to his family. He lives with and supports his partner and stepdaughter in Ensenada. His remaining family all live between Tijuana and Ensenada. But, unlike Mr. Ibarra, who is an American citizen, all but one family member are unable to travel to the United States.

Mexico-limiting conditions thus infringe on Mr. Ibarra's "particularly significant liberty interests" in familial association. *United States v. Wolf Child*, 699 F.3d 1082, 1091 (9th Cir. 2012). Banning someone with strong family ties from traveling to Mexico involves a "greater deprivation of liberty than is reasonably necessary." *United States v. Dominguez*, 816 F. App'x 78, 81 (9th Cir. 2020) (unpublished). So, as the government conceded on appeal in this case, this Court must narrowly draw Mr. Ibarra's Mexico condition to account for his right to familial association. *United States v. Ibarra*, ECF 24 at 19–21 (9th Cir. No. 20-50217) (Government Answering Brief) ("the United States agrees that a limited remand is necessary, consistent with *Dominguez*").

**This Court must "conduct an individualized examination" of Mr. Ibarra's relationships with "affected family members,"** on the record, before restricting his right to see them. *Dominguez*, 816 F. App'x 81. **Any Mexico condition affects Mr. Ibarra's relationship with:**

**Melissa, his partner, and Emma, his five-year-old stepdaughter.**
Mr. Ibarra is in a committed relationship with his partner, Melissa. They have been together for five years and counting. They call each other husband and wife. Melissa has a five year-old daughter, Emma, from a prior relationship; Mr. Ibarra considers her his own. Neither Melissa nor Emma can enter the United States.

ECF 28, Presentence Report ("PSR"), at 7–8.

Mr. Ibarra and Melissa lived together for close to three years in Ensenada before he was arrested. He supported Melissa and Emma financially. He dropped Emma off at daycare and preschool. He, Emma, and Melissa went everywhere together in Ensenada: shopping, to the playground, to the park, to the beach. Mr. Ibarra hopes to return to Ensenada and live with Melissa and Emma, as soon as appropriate. PSR-7–8.

Although Mr. Ibarra's incarceration has been challenging for Melissa and Emma, as they cannot enter the United States to visit Mr. Ibarra, they still talk over the phone at least once a week. After his first-ever period of incarceration, Mr. Ibarra is now motivated more than ever to follow this Court's orders. He does not want to be separated from Melissa and Emma again.

**Rosa Maria, his older sister and best friend, and Maria de Guadalupe, Maria de Fatima, and Maria de Lourdes, his three younger sisters.** Mr. Ibarra calls his four sisters his treasures. Before his arrest, he saw them three times a week, if not more. Every moment he had free time in Ensenada, he and his own family were with his sisters and their families.

He and his older sister Rosa talk to each other about everything. They're best friends. Together, while their parents worked hard, Rosa and Mr. Ibarra cared for their three younger sisters. Rosa writes, "To help out at home, he quickly learned to do domestic chores and went beyond this and learned to cook." ECF 45 at 6. "There has never been a moment when I needed him that he wasn't there." *Id.* As soon as he began working in his early adulthood—he has a decade of consistent work history—he gave Rosa money for school. He helped with her household expenses. Exhibit A at 4.

Mr. Ibarra's younger three sisters see him as an additional father figure. Lourdes remembers, "I often think back to when he took us to the movies in November around our birthdays to see the Twilight saga." ECF 45 at 4. "[H]e

didn't like it, but he still went with us. When mom didn't have money, he would give us some for the bus to go to school." *Id.* Fatima admires him because, she says, "I know that he has a good heart." ECF 45 at 3. "[H]e is the kind of young man who can't stand to see an animal suffer, he tears up watching emotional movies, and he likes comedies and romances. I know that if I need help, he will be one of the first people to always be there." *Id.* Maria Guadalupe says, "He is a very pleasant and noble person who has an enormous heart." Exhibit A at 6.

Mr. Ibarra's sisters are upstanding members of the Ensenada community. Rosa, Maria Guadalupe, and Fatima are homemakers. Lourdes is a student. None has any sort of criminal record. Each has written to this Court explaining how they will work hard to keep their brother on the right path, and ensure he does not make another mistake—particularly after all he has done to help raise and support them. PSR at 7; Exhibit A at 2–4, 6; ECF 45 at 2–4, 6.

**Gladis Galeana, his mother, and Gaspar Ibarra, his father.** Mr. Ibarra is very close with his mother, who lives in Ensenada, and his father, who lives in Tijuana. He saw his mother several times a week in Ensenada before his arrest. He saw his father regularly as well. Mr. Ibarra's father became gravely ill with COVID-19 in 2020. Thankfully, he has since recovered, and has continued to support his son and help him stay on the right path. ECF 45 at 5.

**His extended family, including aunts, uncles, cousins, nieces, and nephews.** Mr. Ibarra is close with his extended family. He saw his nieces and nephews several times a week in Ensenada before his arrest. They still ask when they will next see their uncle. Exhibit A at 3. He saw his aunts, uncles, and cousins in Rosarito every two to three weeks, either at extended family gatherings, or on the drive between Ensenada and San Diego. An uncle writes, "whenever there are family get-togethers, he is very much missed due to the

1  simple fact that he is the pillar of our family." Exhibit A at 5.[1]

2      Mr. Ibarra has lived almost all of his life in Mexico. He grew up in

3  Ensenada as a boy who loved the ocean. He fished, swam, and went snorkeling.

4  He "likes animals, the ocean and being outdoors." Exhibit A at 3. Even so, he

5  maintained a consistent, strong work history in Southern California. He deeply

6  hopes to eventually be able to work in San Diego and live in Ensenada. His dream

7  is to become an electrician in San Diego.

8      **As a result of his family ties, a ban on visiting Mexico will, if anything,**

9  **stand in the way of the statutory goals of supervised release.** Allowing

10  Mr. Ibarra to visit and see family members who cannot enter the United States

11  will serve the purposes of supervised release under § 3553(d)(1), rather than

12  hinder them. Family stability and community support are known to deter

13  recidivism, and thus protect the public.[2] Allowing Mr. Ibarra to see his family—

14  all law-abiding, family-focused people—will improve the stability of his life. It

15  will reduce his risk of relapse and recidivism.

16  **II.   This Court should recommend Mr. Ibarra be placed at FCI Miami or**
17  **FMC Carswell, the two prisons with Spanish-language RDAP,**
    **especially given Mr. Ibarra's custodial experience.**

18      Mr. Ibarra asks that this Court include a recommendation that he be placed

19  at FMC Carswell or FCI Miami so he may participate in Spanish-language RDAP.

20      There are only two Spanish-language RDAP facilities in the country: FCI

21  Miami and FMC Carswell.[3] This Court previously recommended that Mr. Ibarra

22

23  ---
    [1] Mr. Ibarra originally submitted two additional resentencing letters, from his
24  mother and an aunt, describing their close relationships and the role Mr. Ibarra plays
    in his family. At the direction of this Court pursuant to its standing order, he
25  withdrew that submission and omitted those letters to limit the number of
    sentencing letters this Court reviews to five.

26  [2] *See* Mark T. Berg & Beth M. Huebner, *Reentry and the Ties that Bind: An*
    *Examination of Social Ties, Employment, and Recidivism*, 28 Justice Q. 382
27  (2011), https://www.bethhuebner.com/wp-content/uploads/2020/07/Reentry-and-
    the-Ties-that-Bind-An-Examination-of-Social-Ties-Employment-and-
    Recidivism.pdf.

28  [3] *See* Federal Bureau of Prisons, Reentry Services Division, First Step Act

participate in RDAP. ECF 57 at 2. Mr. Ibarra asks that this Court update its recommendation to specifically recommend Spanish-language RDAP so he can further work on his rehabilitation while in custody.

Mr. Ibarra is deeply motivated to ensure that this is his one and only offense. He wants to earn back this Court's trust. He wants to rehabilitate himself. And a key part of his rehabilitation will be working through his addiction to marijuana and cocaine.

Unfortunately, he has not had many programming opportunities in custody during the first third of his sentence. He has been transferred five times: from San Luis to FCC Florence to FCI Mendota to FCI Lompoc to FDC SeaTac. Due to COVID, he was quarantined for three weeks following each transfer, unable to attend programs. While not quarantined, he also spent a great deal of last year in COVID-related lockdown. During that time, he was locked in a cell with one other inmate for 23 or 24 hours a day. Three times a week, they were released into common space for one year, to shower and make phone calls. Because of lockdowns, as well as the physical layout of FDC Seattle, he spent the last year entirely indoors. He will feel the sun on his face for the first time in a year at the San Diego MCC, while awaiting resentencing.

At FDC SeaTac, where he has been housed the longest, he's enrolled in as much programming as possible. He's taken drug education classes and parenting classes. He is working on his GED. Exhibit B. But he would like the opportunity to work more intensely on his addiction. He'd also like the opportunity to be at a prison with more work opportunities.

A recommendation for placement at FCI Miami and FMC Carswell will thus allow him the most effective opportunities to work on his rehabilitation, and be in line with the goals of sentencing. *Cf. United States v. Soto*, No. 14-cr-216-

Program Guide, at 52 (January 2022), https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_2201.pdf.

1    MMA-2, 2022 WL 594546 (S.D. Cal. Feb. 28, 2022) (discussing the Court's

2    authority to make recommendations to the Bureau of Prisons "at any time—

3    including but not limited to—during the sentencing colloquy").

4    **III.     Conclusion**

5             For the foregoing reasons, Mr. Ibarra respectfully requests that, while

6    resentencing him on his supervised-release sentence, this Court:

7             (1) Impose a condition of supervised release that allows Mr. Ibarra to visit

8    family who cannot enter the United States; and

9             (2) Recommend the BOP place Mr. Ibarra at FCI Miami or FMC Carswell

10   for participation in Spanish-language RDAP.

11

12                                                Respectfully submitted,

13    Dated:  May 9, 2022              *s/ Jessica C. Agatstein*

14                                               Jessica C. Agatstein
                                                 Federal Defenders of San Diego, Inc.
15                                               Attorneys for Mr. Ibarra
                                                 Email:  Jessie_Agatstein@fd.org
16

17

18

19

20

21

22

23

24

25

26

27

28